Good morning. Thank you, Your Honor. May it please the Court. Joshua Bachrach. I represent the defendant appellant in this case. This is an ERISA case involving a claim for accidental death benefits. The district court concluded that it was arbitrary and capricious for my client to deny the benefits in this case. That decision is contrary to the known facts. It's contrary to the burden of proof. And it's also contrary to admissions that were made in both the district court and in this court on the cause of death. In the district court, the claimants admitted that the cause of death is inconclusive. And in this court, they stated that it's impossible to know whether any exclusions apply. Why? Because the body was never recovered. So under these circumstances, that can only mean if you don't know if an exclusion applies, you also don't know if it's an accident. And that means the claimants have not met their burden of proof, which is required under the Horton case. So, the district court tried to justify this decision by saying that since mountain climbing is not listed as an exclusion, it is not it can't be denied as being an accident. But that this court stated that you have the initial burden of a claimant to prove that the loss is an accident. And we cite to numerous cases that said if you don't meet that first hurdle, there's no reason to even look at exclusions. So, what we have here is a clear set of admissions that we don't know how Dr. Goldfarb died. His body was never recovered. And the burden's on... 100% the burden is on them. And I'll get to their argument in one second. I just want to clear up one more mistake that I thought was... What we have is a presumed death. We don't know what the cause of death was. In fact, Your Honor... And the beneficiaries have to establish that the death was accidental. Exactly, Your Honor. In fact, the death certificate said unknown cause. Presumed dead, unknown. Because the body was never recovered. But what I think is important here is the district court, very brief opinion, it omitted significant facts that we state. But even if you somehow can jump and leap to this conclusion that it was during mountain climbing and some accidental thing happened, this still could not be considered an accident because of the facts that we do know. The district court looked only generally to whether mountain climbing can be considered an accident. That's not the test. The test is whether under the facts known a reasonable person would have known that they faced serious injury or death. And here, we're not just talking any random mountain climbing. He was with a professional mountain climber who first went out to survey the conditions and that person said, we can't do this. It's too dangerous. There are hidden crevices. There are You just have to turn around. And the professional mountain climber did that. Dr. Goldfarb didn't. He decided on his own to try and climb this summit. And that was a mistake obviously. But not one that even in hindsight he should have known. A reasonable person should have known. This is the 12th highest summit in the world. This had never been climbed in wintertime by anybody. And we also know that in the same week, during this winter and by the way, winter is not the climbing season because it's even harsher. So during this the same week, three other people died mountain climbing on nearby peaks. Now, when you add to that the fact that Mr. Zlanko, who was the mountain professional, when he says to you, I can't take responsibility for your actions, that should send off a red flag. Turn around. Save your life. But instead he went headlong into the risk. And when you do that, that can't be considered an accident. That's like walking into a den of lions. So, based on That argument doesn't appear to me to be as strong as your first argument. Because it seems to be premised on the idea that he died a particular way. And the problem here is we don't know how he died. Agreed, Your Honor. I entirely agree. So, that leads us to their interpretation of the Horton case. He could have committed suicide. He could have been intoxicated. Any number of things that could have caused his death. A heart attack? You're right. A heart attack that a medical professional might opine would have happened anyway. Aneurysm. Who knows? Correct, Your Honor. So, briefly, Your Honor, and again, I will be brief. What they're asking you to do is to take the Horton decision from this court, which dealt with an entirely different set of facts, and to apply it here. They want you to hold that whenever somebody dies from an accident or dies, I'm sorry, whenever somebody dies, and you don't know if it's an accident or how they died, there should be a presumption in favor of an accident. That's not what this court stated in Horton, which obviously said it's their burden. Horton dealt with a unique set of facts where there was some evidence the person may have been trying to commit suicide. But there was also some evidence that it may have been an accident. Suicide, there is a presumption against it. And it's built into the common law. And in the Horton case, this court explained that it's built into the common law. Why? Because it was such a harsh result, it was a criminal act that would forfeit the property rights of the person's heirs. So we have a legal presumption against suicide. We don't have a legal presumption involving mountain climbing. And there shouldn't be, because as Chief Judge just said, there are other possible causes. So this really boils down to the fact that they have not sustained their burden, that this was to be decided under the arbitrary and capricious standard where as long as my client's decision is reasonable, it must be upheld. But unfortunately here, the district court substituted its own judgment in finding in favor of the claimants, and that was wrong. So we're asking the court to reverse that decision. Thank you, Mr. Bacharach. Now let's hear from Mr. Metsch. May it please the court, I'm Lauren Smetsch, Counsel for the Appellees. If I may digress for 30 seconds, this is a homecoming for me. I was a law clerk for this court 53 years ago. I clerked for U.S. Circuit Judge Brian Simpson in Jacksonville, Florida, and I want to tell the law clerks here this is the best job you'll ever have. Thank you very much. Unless they get one of our jobs. That's right. Your Honor, I just want to before we get to the Horton case, I want to just emphasize several issues here. First of all, the policy does not define accident. There's no definition of the word accident in the policy. And I call the court's attention... Can't we just use the ordinary meaning of that term? Well, there is no ordinary meaning if you look at the decision in Johnson v. American United Life, the Fourth Circuit case I cited recently in a letter to the clerk, where they said that the failure of an accidental death policy to define the word accident leads to the rule of contra-appropriantum, which means it's construed against the issue of the policy. Yeah, maybe so, but you would agree, would you not, that an intentional death, a suicide, would be excluded from accidental death? Well, it's in the policy. The policy excludes, no question about it, it excludes suicide. Yeah, but the problem, so the problem it seems to me is we don't know how this man died. Well, that's right, but we do have a concession from the insurance company, both in the district court and here, that it was not a suicide. They disclaimed that, and the judge in the trial court noted the concession, and the concession is here in the brief. So, the insurance company has already conceded at both levels of this litigation that it was not a suicide. Well, I thought what they conceded was that they were not relying upon a suicide exclusion, but their argument was that this was not, you could not establish that this was an accidental death because we don't know how he died. So, what we have here is, so if it was an exclusion, they would have to establish that it was a suicide, and they don't want to accept that burden because for the same reason that they say you should lose, which is they don't know how he died. It could have been a suicide. It could have been an accident. It could have been any number of things. We just don't know. Your Honor, here's the problem. They want to have their cake and eat it too. If they wanted to disclaim reliance upon the exclusion for suicide, then the trial judge and my clients as well say they've disclaimed suicide. They can't just say, well, they're going to disclaim the exclusion. There's a difference, Mr. Metsch, between saying we're not relying upon it because we can't prove it because we don't know how he died. That's right. And saying that it was a suicide. It doesn't seem to me that this is having your cake and eating it too. It seems to me that the basis for their position on both points is the same. We don't know how he died. Well, this court in Horton, we believe, dealt with this very apparently there was then the insurance company did not have any evidence that the insured had set a fire inside the cockpit and it caused the plane to crash. As a matter of fact, if you look at the last two paragraphs of the Horton decision from this court, it quotes the district court as saying that there was nothing but pure speculation on the part of the insurance company. There was no evidence in that case. And yet this court held in Horton that there's a presumption against suicide and in favor of an accident. And what we have here is exactly that was the same problem we have in Horton we have here. We don't know exactly how what caused the death. We do know that he died. We do know that the insurance company paid the basic benefit. We do know that the insurance policy does not define accident. We do know that the insurance policy does not exclude mountain climbing. And if you were looking at the Johnson case versus the Johnson versus America. We know a lot of things, but what we don't know is how he died. Well, that's why we have the presumption. It's a contract case here. They, uh, the question is how do we deal with a situation like this? And the way this court came up with it in Horton was we have a presumption and the burden shifts. Presumption is just a presumption of death. It's not the presumption of the cause of death. Sure it is, Your Honor. Take a look at the case. They've already conceded the death. That's not an issue in this case. You pay the benefit. There's no body. So there's a presumed death. That's what the basis of the certificate of death is, right? Well, there's a little bit more than that in the record. There was two helicopter searches were done. They couldn't get the helicopter lower enough to pick up the body. Right. They couldn't find him. Right. They presumed dead. They searched for him. And the third time around, in the springtime, they couldn't find the body. And the assumption was, not a presumption, assumption, is that an animal had eaten it and eaten the body and disposed of it that way. But it's hard to believe given the circumstances and Judge Marino found it equally hard to believe that a distinguished physician, a member of the Harvard Medical School staff, a faculty, well known for his good works, and an Orthodox Jew would go there halfway across the world to a Muslim country and take his own life. It just didn't make any sense. I get that, and I think that may all well be true. There's a lot of reasons why I might think that he wouldn't have gone there at all, but again, I come back to the problem which is, you have to establish that the death was accidental, and the problem is, you don't know how he died. Well, again, Your Honor, it's a question of case. We would not have gone into this litigation without the assistance of the Horton decision, which has presumptions in it, and had the same problem. They don't know how the insured had died, whether he had set a fire in the cockpit or whether the plane crashed for some other reason. As the trial judge in Horton pointed out, and this court noted as well, all we had was pure speculation on the part of the insurance company, the same insurance company in that case, as in this case, that he had set a fire and committed suicide. The question is, under these circumstances, what would the other... Let me make sure I understand your argument, Mr. Metsch. Thank you. You're not arguing that some different definition of accident would make this case clear, right? Because you can see, I mean, under any reasonable definition of accident, we don't know the cause of death. Isn't that right? Well, we don't know the exact cause of death. We don't know whether, for example, he had a heart attack, or whether he had a stroke, or whether he just slipped or the rock beneath him collapsed and he fell down. So what I'm asking is a different definition of accident doesn't help you because it doesn't change the facts. There is no definition of accident in this case. That's the problem. There is no definition, and the Fourth Circuit said that's the insurance company's problem. They should define accident in a policy, but there is no definition here. So we're playing around here. Why can't we use the Federal Common Law of ERISA to give some unity and meaning to the concept of accident where the term is otherwise not defined in the policy? Well, this is really a contract case that we have here. So the question... Well, it's an ERISA case. Well, yes, it's in ERISA because... So we have a Federal Common Law that we've developed around ERISA. Why wouldn't we simply use a different meaning of the term accident, even though it's undefined plainly in the policy? Your Honor, this Court in Horton exactly used those words. It said that this would be the common law of ERISA for dealing with a claim for accidental death benefits where the exact cause of death is unknown, and it said that this should be the ERISA common law. That's what this Court said in Horton, and we agree with that. Holding aside what we mean by the term accident, could not a reasonable person under the circumstances of this case have foreseen that serious bodily injury or death was highly likely to occur as a result of the doctor's decision to climb Pastora Peak in the dead of winter by himself after his climbing partner, a professional climber of over 30 years, evaluated the condition of the trail, had nearly fallen himself, deemed the trail too dangerous to traverse, and after repeatedly asking the doctor not to go forward said, well, we can't be responsible. You ought not to do that. Could not a reasonable person under these circumstances have foreseen that serious bodily injury or death would result if he went forward? Your Honor, I would submit that any mountain climbing is dangerous, and that's why the insurance company, if it wanted to protect itself against this risk, would have put an exclusion there for mountain climbing as in the case that I was citing before where the exclusion does appear, and that's in the Johnson v. American United Life where they excluded hang gliding, bungee jumping, automobile racing, motorcycle racing, skydiving, rock climbing, or mountain climbing. So the gradations of trying to judge what was appropriate under the circumstances of mountain climbing, which inherently is dangerous. That may be, but you had particularly egregious and dangerous circumstances here, did you not? Well, it was obvious. I mean, in terms of everything that the other fellow had said, Zlonko had said, the risks were palpable. It was the dead of winter, as I said. Nobody had ever climbed this peak in the dead of winter. The other guy tried, went up a certain way, slipped, found it intolerably dangerous, and said, I'm not going forward and you shouldn't either. Does that maybe put a spin on it that's a little bit more than all mountain climbing is dangerous? Well, the problem is this. It's an interesting issue as to whether in what we consider to be a contract case where the insurance company got paid for assuming a certain risk and being at risk of death in a situation other than a suicide, for example, or other than a heart attack. And let's face it, Your Honor, for Dr. Goldfarb to get halfway up the mountain and having been an experienced mountain climber and a marathon runner, yes, anybody could have a heart attack, but there's no evidence of that. And that's exactly what this court had to deal with in Horton. There was no evidence of it. There's speculation, but no evidence. What do we do in this situation? We love Horton. That's what we're here about. We think Horton deals with this situation. Horton's about an exclusion, right? Well, there was no We have the same situation here, Your Honor. No, no, no, no. As to who has the burden here. Am I wrong? Isn't Horton about an exclusion? No, they were very careful not to invoke an exclusion because they didn't have the evidence to support an exclusion. That would be an affirmative defense, and they didn't have it. Right. It's the same reason that you don't have. We have a presumption. We believe Horton gives us a presumption. Thank you very much, Your Honor. Mr. Bachrach. The presumption is against suicide. And that's an exclusion that was in the Horton case in the policy. There is no presumption. There is no exclusion relied on. So we're left with no known cause of death. The only other thing I would like to say is that Fourth Circuit case that they rely on, that was decided under De Novo review. It's an unpublished decision, if I'm not mistaken, Johnson. It involved death while drinking, intoxication. Counsel asked you to apply contraprofarentum, but we have discretion here. So it can't be applied under this court's decisions. And as Judge Marcus said, we have a common law definition of accident under Buse v. Allianz. It's the Wickman test borrowed from the First Circuit. So based on all of this, we would again state they have not met their burden. If there are no other questions. Okay. Thank you very much. We are adjourned for today.